UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NABIL SAAD,

              Plaintiff,                    Case No. 2:20-cv-10136
                                            District Judge Stephen J. Murphy
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.
_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 15) and AFFIRM THE COMMISSIONER'S DECISION</u>**

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 15), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

      Plaintiff, Nabil Saad, brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security (Commissioner)

denying his applications for Disability Insurance (DI) benefits and Supplemental

Security Income (SSI).  This matter is before the United States Magistrate Judge

for a Report and Recommendation on Plaintiff's motion for summary judgment
(ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No.
15), and the administrative record (ECF No. 8).

### A.   Background and Administrative History

Plaintiff alleged his disability began on January 1, 2017, which was
amended at the hearing to May 1, 2014, at which point he would have been 42
years old.  (R. at 39-41, 292.)  He originally filed applications for disability
insurance benefits (DIB) and SSI on September 26, 2016 (R. at 243-252), which
were denied on February 6, 2017 (R. at 117-132).  Plaintiff then re-applied for both
on June 29 and 30, 2017.  (R. at 115-116.)  In an un-dated disability report, he lists:
"back surgery 10/2016 unsuccessful, 2 new bulging discs, chronic pain, numbness
and tingling in right foot, difficulty walking, standing or sitting, trouble sleeping
due to pain, uses cane when necessary, depression, and prostate condition (hx of
surgery)" as limiting his ability to work.  (R. at 295.)  In another disability report,
also without a date, Plaintiff lists only back injury as limiting his ability to work.
(R. at 274.)  It is unclear which is the operative disability report, but the ALJ cites
to the report listing only back injury.  (R. at 20.)  His applications were denied on
February 16, 2018.  (R. at 137-170.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (R. at
171-172.)  On November 26, 2018, ALJ Roy E. LaRoche, Jr. held a hearing, at

which Plaintiff and a vocational expert (VE), Don Harrison, testified.  (R. at 36-64.)  Plaintiff's counsel asked the ALJ to reopen Plaintiff's prior 2016 applications (R. at 40-41), and it appears from the hearing decision that the ALJ adjudicated the claims on the basis of those original applications (R. at 15, 28-29.)  On January 29, 2019, ALJ LaRoche issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-35.)  For purposes of Plaintiff's DIB claim, the ALJ found June 30, 2017 to be his date last insured.  (R. at 18.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 236-239.)  However, on November 23, 2019, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ LaRoche's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on January 21, 2020.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 712 pages of medical records, which were available to the ALJ at the time of his January 29, 2019 decision.  (R. at 345-1057 [Exhibits 1F-19F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

3

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had engaged in substantial gainful activity in 2017, but that this constituted an unsuccessful work attempt.  (R. at 18.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: spinal disorders status post laminectomy in October 2016.  (R. at 18-19.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 19.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except the claimant can occasionally climb, stoop, kneel, crouch, and crawl and would need the ability to stand for two to three minutes at the workstation after 30 minutes of sitting.

(R. at 19-27.)  At **Step 4**, the ALJ determined that Plaintiff was able to perform past relevant work as a loan officer and data entry clerk.  (R. at 28.)  The ALJ therefore concluded, without making a Step 5 determination, that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 1, 2014. (R. at 28-29.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

**D.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

Court does "not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff argues that: (1) the ALJ's Step 3 determination was incomplete and unsupported by substantial evidence, and the error was not harmless because, on the basis of the evidence in the record, the "Court cannot say that, if the ALJ had made the required findings at Step 3, [he] necessarily would have found that Plaintiff did not meet or medically equal the relevant Listing"; (2) the ALJ erred at Step 2; and (3) the ALJ's evaluation of his subjective symptoms was not supported by substantial evidence.  (ECF No. 12, PageID.1118-1129.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the

Commissioner's decision.  (ECF No. 15, PageID.1144-1164.)  I will address each argument in turn.

### 1.    The ALJ's Step 3 Determination

An ALJ must "consider all evidence in [the claimant's] case record," 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), and, at Step 3 particularly, must "consider the medical severity of [the claimant's] impairment(s)."  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Here, in finding that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the Listed impairments, ALJ LaRoche stated:

> Concerning the claimant's degenerative disc disease, listing 1.04 for disorders of the spine has been considered.  However, it has been determined that the claimant's degenerative disc disease does not meet the required listing standard of 1.04.  Listing 1.04 requires: 1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raise test; or 2) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriately medically acceptable imaging manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or 3) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.  In this case, there is no evidence of a neuro-anatomic distribution of pain in connection with cord compression, no positive diagnosis for spinal arachnoiditis, and no documented lumbar stenosis with pseudoclaudication.  Accordingly, the claimant does not meet or equal listing 1.04 for disorders of the spine.

7

(R. at 19.)

First, Plaintiff's general argument that the ALJ's Step 3 analysis was incomplete because he "neglect[ed] to properly discuss and evaluate the medical evidence of record" (ECF No. 12, PageID.1120), lacks merit.  In *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011), the Sixth Circuit suggested that an insufficient Step 3 analysis "was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary."  But more recent decisions hold otherwise. *See, e.g., Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that any error in the ALJ's Step 3 findings "is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment between October 2006 and July 2011"); *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding that the ALJ's determination was supported by evidence in the record, and thus it was unnecessary for the ALJ to make specific findings regarding a particular listed impairment).

More specifically, an ALJ's failure to articulate Step 3 findings is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled . . . ."  *M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp.2d 846, 861

(E.D. Mich. 2012) (Goldsmith, J., *adopting report and recommendation* of Michaelson, M.J.) (quotation marks, citation, and emphasis omitted).  This is because the Sixth Circuit "has consistently rejected a heightened articulation standard, noting . . . that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews v. Comm'r of Soc. Sec.*, No. 12-13111, 2013 WL 2200393, at *12 (E.D. Mich. May 20, 2013) (citing *Staggs v. Astrue*, No. 2:09-cv-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (quotation marks and citation omitted)). As the *Staggs* court further explained, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis."  *Staggs*, 2011 WL 3444014, at *12 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings. ***… even though he did not spell out every fact a second time under the step three analysis.").  Indeed, "it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three

determination." *Smukala v. Comm'r of Soc. Sec.*, No. 15-10612, 2016 WL 943953, at \*10 (E.D. Mich. Feb. 23, 2016), *report and recommendation adopted*, No. 15-cv-10612, 2016 WL 931161 (E.D. Mich. Mar. 11, 2016); *Gower v. Comm'r of Soc. Sec.*, No. 13-14511, 2015 WL 163830, at \*9 (E.D. Mich. Jan. 13, 2015) (holding that an ALJ does not err when his Step Three findings are supported elsewhere). *See also M.G.*, 861 F.Supp.2d at 861.

While the ALJ's reasoning under Step 3 is obviously cursory here, a review of the hearing decision as a whole reveals a much more extensive discussion of the medical records which support the ALJ's Step 3 conclusion than Plaintiff suggests, as will be discussed in further detail below.

### 2.    Substantial evidence supports the ALJ's Step 3 determination

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he is disabled at Step 3 of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). And "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to come close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*,

789 F.2d 363, 367 (6th Cir. 1986) (Commissioner's decision affirmed when

medical evidence "*almost* establishes a disability" under Listing).

Listing 1.04A[2] provides, in pertinent part:

1.04 Disorders of the spine (e.g., herniated nucleus pulposis, spinal
arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,
facet arthritis, vertebral fracture), resulting in compromise of a nerve
root (including the cauda equina) or the spinal cord.  With:

A. Evidence of nerve root compression characterized by neuro-
anatomic distribution of pain, limitation of motion of the spine, motor
loss (atrophy with associated muscle weakness or muscle weakness)
accompanied by sensory or reflex loss and, if there is involvement of
the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Again, despite Plaintiff's argument to the contrary, the ALJ discussed the

medical evidence relevant to Listing 1.04A throughout the hearing decision, and as

the Commissioner asserts (ECF No. 15, PageID.1145-1153), referenced records

undermining Plaintiff's claim that "the evidence *could* reasonably meet or equal

the relevant Listing" (ECF No. 12, PageID.1122).  For example, the ALJ

acknowledged that Plaintiff "suffered from spinal disorders status post

laminectomy in October 2016," including lumbar disc degeneration (R. at 20-21,

25-26), and addressed records demonstrating pain, spasms, lumbar tenderness,

positive straight-leg raising tests on the right side, numbness, and decreased range

---

[2] Plaintiff narrows his challenge to Listing 1.04A only (ECF No. 12, PageID.1120)
so the Court should do the same.

of motion/ability to squat and bend at various times from 2014 to 2018, but also

cited to numerous records noting full motor strength, intact sensation, normal

musculoskeletal range of motion, and negative straight-leg raising tests throughout

that same period of time (R. at 20-27).  And a general review of the records cited

confirm the ALJ's summary of the evidence.  (*See*, *e.g.*, R. at 345-348 [Exhibit 1F]

(mild degenerative disc disease), R. at 408-410 [Exhibit 3F] (straight-leg raise

negative, full strength in all extremities), R. at 757-761 [Exhibit 12F].)  Further,

even without a review of each of the records cited by the ALJ, Plaintiff does not

suggest that the ALJ's summary of those records is incorrect in any way.

In his brief, Plaintiff cites to records documenting spinal cord compression

in the lumbar spine, consistent complaints of severe lower back pain, nerve root

compression, lumbar spine range of motion deficits, right lower extremity

weakness, and positive straight leg raises (ECF No. 12, PageID.1120-1121, citing

R. at 347-348 [Exhibit 1F], 448, 457-458 [Exhibit 3F], 605 [Exhibit 7F], 708-709

[Exhibit 10F], 779 [Exhibit 14F], 1007 [Exhibit 19F]), but a review of these

records, in combination with those cited by the ALJ and discussed above, fail to

convince me that Plaintiff satisfied each element of Listing 1.04A simultaneously

for a period of at least 12 months.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

1.00D ("Because abnormal physical findings may be intermittent, their presence

over a period of time must be established by a record of ongoing management and

evaluation.").  And Plaintiff makes little argument to the contrary, instead basing his argument largely upon the alleged insufficiency of the ALJ's Step 3 analysis which, as stated above, lacks merit.  *Walters*, 127 F.3d at 529 (Plaintiff bears the burden at Steps 1-4); *Reynolds*, 424 F. App'x at 414 (not in the province of the Court to re-weigh the evidence).

Moreover, Plaintiff appears to concede that despite subjective complaints of numbness in his right foot, the record contains no objective testing confirming sensory deficits in the lower extremities (ECF No. 12, PageID.1121), despite the fact that sensory loss is an element of Listing 1.04A, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A, and the majority of the positive straight-leg raising tests he references in his brief fail to indicate that the results were obtained *both sitting and supine*, as Listing 1.04A requires, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A; *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *14 (E.D. Mich. Apr. 28, 2016) ("Lack of evidence that the straight-leg test was positive in both the sitting and supine position is itself sufficient to preclude a claimant from meeting Listing 1.04A.").  Consultative examiner Dr. Cynthia Shelby-Lane did indicate that during her 2017 examination of Plaintiff, the test was performed both sitting and supine, but by Plaintiff's definition, the test was only positive in the supine position.  (R. at 779 [Exhibit 14F].)  *See* ECF No. 12, PageID.1113 n.1 ("The straight leg raise test is used to assess for the impingement of a nerve root

13

from a herniated disc or from a space-occupying lesion by stretching that root.  The

patient should be in a supine position.  A positive test elicits pain in the leg,

buttock, or back at 60 degrees or less of leg elevation.").  In the seated position,

Plaintiff's score in both legs was 90 degrees.  (R. at 779 [Exhibit 14F].)

Furthermore, even if positive in both the sitting and supine positions, one positive

test does would not satisfy this element of Listing 1.04A for a period of at least 12

months.

Finally, to the extent Plaintiff argues equivalence (ECF No. 12,

PageID.1118-1119, 1121-1122), the Court should find the argument undeveloped

and inadequate.  Plaintiff simply suggests that the Court *could* demonstrate

equivalence, largely relying on the assertion that the ALJ's Step 3 analysis was

insufficient, which lacks merit.  Accordingly, the Court should decline to find error

at Step 3.

### 3. The Court should conclude that the ALJ did not err at Step 2

At Step 2, the ALJ addressed only Plaintiff's mental health and back

impairments, finding Plaintiff's spinal disorders status post laminectomy in

October 2016 to be severe, and  Plaintiff's mental health impairments not severe.

(R. at 18-19.)  Plaintiff asserts error on the basis that the ALJ failed to find his

carpal tunnel syndrome, ulnar neuropathy, and trigger finger severe at Step 2,

resulting in an inaccurate RFC.  (ECF No. 12, PageID.1123-1125.)

14

a.      **Step 2 standard**

Step 2 requires the ALJ to determine if a claimant suffers from any severe

impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. §§

404.1520(c), 416.920(c).  Plaintiff bears the burden at Step 2 of establishing that he

suffers from a severe impairment.  *See Walters*, 127 F.3d at 529.  An impairment is

considered severe if it "significantly limits your physical or mental ability to do

basic work activities[.]"  20 C.F.R. § 404.1520(c).  "An impairment or

combination of impairments is found 'not severe' and a finding of 'not disabled' is

made at this step when medical evidence establishes only a *slight abnormality* or a

combination of slight abnormalities which would have no more than a minimal

effect on an individual's ability to work even if the individual's age, education, or

work experience were specifically considered . . . ."  S.S.R. 85-28 (emphasis

added).

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in

the disability determination process.'"  *Anthony v. Astrue*, 266 F. App'x 451, 457

(6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).

However, the Step 2 severity analysis is only a threshold determination.  Sixth

Circuit precedent readily establishes that failure to find an impairment severe at

Step 2 of the sequential analysis is not reversible error if the ALJ found another

impairment severe and thus continued with the five-step evaluation.  *See e.g. Fink*

*v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457.

Thus, "any alleged omission from the list of severe impairments does not

undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and

nonsevere impairments in the remaining steps of the sequential analysis." *Dickey-*

*Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013)

(quotation marks and citation omitted).  Accordingly, "[t]he fact that some of [the

plaintiff's] impairments were not deemed to be severe at step two [may be] legally

irrelevant." *Anthony*, 266 F. App'x at 457.

### b. Analysis

The Court should decline to remand on the basis of any error at Step 2.  In

one un-dated disability report, Plaintiff listed only back injuries as limiting his

ability to work (R. at 274), while in another he listed several impairments, but not

anything specifically related to his hand or wrist (R. at 295).  Nevertheless,

Plaintiff now argues that the ALJ should have found his carpal tunnel, ulnar

neuropathy, and trigger finger impairments severe at Step 2, citing evidence in the

record of each, as well as reduced grip strength in the right hand.  (ECF No. 12,

PageID.1123-1124, citing R. at 414, 425-429, 434, 437, 451 [Exhibit 3F], 821-939

[Exhibit 18F].)

16

However, even if the ALJ erred at Step 2, which the Court need not find, any error would be harmless because, contrary to Plaintiff's argument otherwise,[3] the ALJ found other impairments severe and continued with the sequential evaluation, considering Plaintiff's hand and wrist impairments throughout while summarizing the medical records. *Dickey-Williams*, 975 F.Supp.2d at 822-23. Indeed, the ALJ extensively discussed the medical records related to these impairments as part of his RFC analysis (*see* R. at 19, 21-23, 27), but simply declined to include any hand-related limitations in Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (determination of RFC is an issue reserved to the Commissioner).

And Plaintiff has not met his burden of establishing entitlement to a more restrictive RFC. *Walters*, 127 F.3d at 529. He cites to records indicating reduced grip strength and numbness, but the ALJ considered medical records noting both in formulating Plaintiff's RFC (R. at 19, 21-23, 27), and it is not in the province of the Court to re-weigh the evidence. *Reynolds*, 424 F. App'x at 414. Further, Plaintiff fails to cite to evidence of concrete limitations resulting from reduced grip strength or numbness, or to address whether such limitations would have affected

---

[3] Plaintiff states in his brief that "[h]ad the ALJ properly assessed all the objective evidence and Plaintiff's statements, the impairments in his dominant arm/hand would pass the *de minimis* hurdle standard and could reasonably be construed to cause limitations reaching, handling, and fingering." (ECF No. 12, PageID.1124-1125.)

his ability to do his previous work as generally performed (which the ALJ found at

Step 4), only cursorily stating:

> The ALJ did not pose any hypothetical questions to the Vocational
> Expert that included any limitations involving the hypothetical
> worker's use of the dominant arm/hand in the workforce; as such, we
> cannot say with any certainty that the lack of these limitations in the
> residual functional capacity is a harmless error as they may well rule
> out sedentary and light work activity.

(ECF No. 12, PageID.1125.)  And, as the Commissioner points out (ECF No. 18,

PageID.1161), Plaintiff, who was represented by counsel, posed no such questions

to the VE at the hearing.  (R. at 61-62.)  As the Sixth Circuit explained and

illustrated in *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 636 (6th Cir. 2016):

> Kepke argues that the ALJ failed to provide specifics (in the RFC and
> hypotheticals) as to the frequency of her need to alternate between sitting
> and standing. . . .  Because Kepke failed to probe this alleged deficiency at
> the ALJ hearing, she forfeited this argument. *See Sims v. Comm'r of Soc.
> Sec.*, 406 Fed.Appx. 977, 982 (6th Cir.2011) ("Yes, the vocational expert's
> testimony could have been further refined; but as the district court pointed
> out, plaintiff's counsel had the opportunity to cross-examine, but asked only
> one question and did not probe the deficiency now identified on appeal.").

The same can be said here.

### 4.    The ALJ's evaluation of Plaintiff's subjective symptoms.

Finally, for the reasons that follow, the Court should reject Plaintiff's claim

that the ALJ's evaluation of his subjective symptoms is unsupported by substantial

evidence.

In assessing Plaintiff's RFC, the ALJ reasoned that

18

> the claimant's medically determinable impairments could reasonably
> be expected to cause some of the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with the
> medical evidence of record.  Here, the claimant has described daily
> activities and exhibited behavior that is inconsistent with the
> claimant's allegations of disabling symptoms and limitations.
> Additionally, the objective medical records do not completely
> corroborate his statements and allegations regarding his impairments
> and resultant limitations.

(R. at 21.)  To determine whether a claimant is disabled, an ALJ must consider all

of a claimant's symptoms and the extent to which those symptoms "can reasonably

be accepted as consistent with the objective medical evidence and other evidence."

20 C.F.R. §§ 404.1529(a) and (c), 416.929(a) and (c); S.S.R. 16-3p, 2017 WL

5180304, at *2.

Plaintiff takes issue with the fact that, in support of the above conclusion, the

ALJ referenced that he drove a car, watched television, and displayed normal

physical examination findings like regular heart rhythm.  (ECF No. 12,

PageID.1128.)  If this were all the ALJ actually considered, Plaintiff's argument

would be persuasive, but this summary of the ALJ's analysis is sorely lacking.

Indeed, the ALJ referenced activities far beyond driving a car and watching

television.  More comprehensively, he stated:

> Despite the claimant's symptoms, the claimant reported that he did
> not need reminders to take medication, could go out alone,
> shopped in stores and by computer, had no problems handling
> money, could pay attention for a long time, was good at following

19

instructions, got along well with authority figures, and was able to handle changes in routine (Ex. 7E). Additionally, medical records indicate that the claimant maintained his own personal care, did light household chores, visited with his daughter, worked as a supervisor at a warehouse, (Ex. 13F/2). Further, medical records also show that the claimant displayed an atraumatic head, round and reactive pupils, a supple and non-tender neck, a regular heart rate and rhythm, no chest wall tenderness, clear lungs, normal respiratory effort, normal breath sounds, no respiratory distress, a soft and non-tender abdomen, intact bowel sounds, no edema, intact cranial nerves, full motor strength,  normal and symmetrical reflexes, no carotid bruits, normal higher cortical function, normal muscle bulk, good coordination, a stable gait, negative straight leg raise testing on the left, intact sensation, normal musculoskeletal range of motion, and a normal gait and station (Ex. 1F/5-18; 3F/36-38, 41-42, 47-51, 55-60, 66-74, 113-115; 5F/2-5; l0F/44-45, 51-52, 57-68; 12F/33-37; 18F; 19F).

(R. at 26.)  It is most certainly appropriate for an ALJ to consider a claimant's household and social activities – among other things, such as multiple objective medical records and findings – when evaluating a claimant's subjective symptoms, *Walters*, 127 F.3d at 532; S.S.R. 16-3p at *8; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Plaintiff argues that it was somehow improper for the ALJ to consider his work attempts after the alleged onset date to formulate the RFC but provides no law in support of that assertion.  Furthermore, in challenging the ALJ's reference to somewhat insignificant physical examination findings like regular heart rhythm and normal breath sounds (ECF No. 12, PageID.1128), Plaintiff ignores the ALJ's comprehensive analysis of his medical records (*see* R. at 20-27), discussed in more detail above.

### F.      Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at

529 ("[D]uring the first four steps, the claimant has the burden of proof; this

burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown

legal error that would upend the ALJ's decision.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers

Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 19, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

22